UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA ANN EVELETH,

      Plaintiff,             CIVIL ACTION NO. 14-CV-14879

vs.                        DISTRICT JUDGE MARIANNE O. BATTANI

                             MAGISTRATE JUDGE MONA K. MAJZOUB
COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Melissa Eveleth seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 16) and Defendant's Motion for Summary Judgment (docket no. 18).  Plaintiff filed a Reply.  (Docket no. 19.)  The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.      Recommendation**

The undersigned recommends that Plaintiff's Motion for Summary Judgment [16] be GRANTED and that Defendant's Motion for Summary Judgment [18] be DENIED.  This matter should be remanded for further consideration as discussed herein.

**II.     Procedural History**

1

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of October 16, 2008, alleging that she had been disabled since April 1, 2005, due to Raynaud's phenomenon, fibromyalgia, polyarthralgia, chronic fatigue syndrome, connective tissue disorder, early limited scleroderma, weakened immune system, irritable bowel syndrome, fecal incontinence, abnormal cervical cells, gastroesophageal reflux disease, insomnia, asthma, a history of polysubstance abuse, affective disorder, and anxiety disorder.  (*See* TR 24, 26-27.) After Plaintiff's application was initially denied, she requested a hearing, which was held before ALJ Chalres Headrick in 2010.  ALJ Headrick found that Plaintiff was not disabled, but the Appeals Council remanded the matter because ALJ Headrick did not account for Plaintiff's social limitations in his determination.  (*See* docket no. 16 at 4-5.)  On remand, ALJ Paul Jones found that Plaintiff suffered from severe anxiety disorder and severe affective disorder but found that all of Plaintiff's other impairments were non-severe.  The Appeals Council again remanded the matter for further consideration, and again, ALJ Jones found that Plaintiff was not disabled under the Act.  (TR 24-39.)  This time, the Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review.  The parties then filed their instant Motions.

**III.     Plaintiff's Testimony, Medical Evidence, and Vocational Expert Testimony**

Plaintiff (docket no. 16 at 6-10), Defendant (docket no. 18 at 4-8), and the ALJ (TR 27-32, 34-37) each set out a detailed factual recitation with regard to Plaintiff's medical record, the vocational expert's testimony, and Plaintiff's hearing testimony.  Despite the Parties' disparate characterization of the facts, the undersigned finds that there are no material factual inconsistencies between these three recitations of the record.  Therefore, the undersigned will incorporate these statements of fact by reference.  Nevertheless, the undersigned has conducted

2

an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

### IV. Administrative Law Judge's Determination

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2010; that she had not engaged in substantial gainful activity from April 1, 2005, through December 31, 2010, her alleged onset date through her date last insured; and that she suffered from severe affective disorder and anxiety disorder. (TR 26.) The ALJ also found, however, that Plaintiff suffered from Raynaud's phenomenon, fibromyalgia, polyarthralgia, chronic fatigue syndrome, connective tissue disorder, early limited scleroderma, weakened immune system, irritable bowel syndrome, fecal incontinence, abnormal cervical cells, gastroesophageal reflux disease, insomnia, asthma, and a history of polysubstance abuse, determining that these impairments were non-severe as they did not "singly or in combination, even mildly infringe upon her ability to perform basic work activities, either exertional or non-exertional." (TR 27-31.) The ALJ then found that her impairments did not meet or equal those listed in the Listing of Impairments. (TR 32-33.)

The ALJ then found that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff had the residual functional capacity to perform "a full range of work at all exertional levels, but was non-exertionally limited to simple, routine, and repetitive tasks; occasional decision-making; and occasional public interaction, coworker interaction, and supervision." (TR 33-37.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 38.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from

April 1, 2005, through December 31, 2010. (TR 38-39.)

**V.     Law and Analysis**

   **A.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the

4

decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a

5

sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues, primarily with regard to the ALJ's Step-2 determination, that the ALJ did not properly weight the opinion evidence in this matter. (Docket no. 16 at 11-24.) Plaintiff also argues that the ALJ failed to properly consider her mental restrictions when determining her RFC. (*Id.* at 24-26.)

### 1. The ALJ's Step 2 Determination and His Consideration of the Medical Opinions of Record

As a preliminary matter, the crux of Plaintiff's argument is that the ALJ improperly weighed the medical opinions of record, which caused him to determine that Plaintiff's fibromyalgia syndrome (FMS) and chronic fatigue syndrome (CFS) were not severe at Step 2. (Docket no. 16 at 11-24.) Plaintiff contends that the ALJ erred when he failed to consider Plaintiff's subjective complaints because FMS and CFS are often diagnosed without objective testing. (*Id.* at 13-14.) Plaintiff implies that these errors tainted the rest of the ALJ's analysis. But it is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r* of Soc. Sec.,

6

299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ found that Plaintiff suffered from severe affective disorder and anxiety disorder, and he continued his analysis to consider whether all of Plaintiff's impairments, severe or non-severe, resulted in any functional limitations. Plaintiff focuses much of her argument on her FMS and CFS diagnoses, asserting that the ALJ failed to acknowledge related findings by her doctors. But the ALJ did acknowledge that Plaintiff suffered from FMS and CFS (among other ailments); he then found that these conditions did not "even mildly infringe upon her ability to perform basic work activities."[1] (TR 31.)

Nevertheless, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). But it is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.*

---

[1] This same principle applies to Plaintiff's arguments regarding Plaintiff's Raynaud's, her Diarrhea and IBS, and the other diagnoses discussed briefly in Plaintiff's Motion for Summary Judgment. The ALJ acknowledged each of these diagnoses but found that they did not impede Plaintiff's ability to work.

(citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

Additionally, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4. Notably, though, "it is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied

the correct legal standard and that his decision is supported by substantial evidence. *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.)

Even so, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

It is in this light that the Court must examine Plaintiff's argument and the ALJ's consideration of opinions provided by her physicians.

### a. Records from NP Stuner and Dr. Nowland

Plaintiff first takes issue with the ALJ's consideration of treatment notes and diagnoses from Nurse Practitioner Mary Stuner and Dr. Devota Nowland, both of whom treated Plaintiff at

9

North Mission Healthcare. Plaintiff contends that the ALJ erroneously disregarded these opinions because Dr. Nowland was Plaintiff's treating physician, and while NP Stuner treated Plaintiff on many occasions, all of the records "came from [Dr. Nowland's] facility," and "she was well informed of [Plaintiff's] impairments and restrictions." (Docket no. 16 at 12, 21.) Thus, Plaintiff asserts, the ALJ should not have discounted the records simply because NP Stuner was the first person to diagnose Plaintiff. (*Id.* at 12.)

The ALJ discussed both NP Stuner's findings and opinion and Dr. Nowland's opinion in great detail:

> . . . [C]laimant received treatment at North Mission Healthcare from Mary Stuner, N.P., for a variety of complaints. On August 9, 2005, Ms. Stuner diagnosed claimant with fatigue and asthma, noting that claimant complained of increased fatigue occurring for one month, yet no abnormal findings were reported in the office visit notes. Ms. Stuner reiterated her diagnoses of fatigue on May 4, 2006, yet again mentioned no objective or other accepted findings to support this determination. Based upon claimant's subjective statements, she also diagnosed her with insomnia and prescribed her Restoril. On December 12, 2006, Ms. Stuner diagnosed claimant with asthmatic bronchitis, describing wheezes throughout. Progress notes from June 11, 2007, mention that Ms. Stuner diagnosed claimant with asthma and Raynaud's phenomenon, but other than mentioning that claimant displayed expiratory wheezes throughout on examination, no other objective findings were mentioned. Instead, it appears that Ms. Stuner based her diagnosis of Raynaud's phenomenon on claimant's subjective complaints of burning pain in the legs and thighs and a purplish color. Ms. Stuner made similar findings and diagnoses on October 10, 2007. A September 8, 2008, office visit note mentioned that claimant reported having good results using Mucinex DM and that she had prolonged expiratory phase throughout, decreased rotation of the cervical spine, and decreased flexion of the lumbar spine, resulting in Ms. Stuner diagnosing claimant with asthma and polymyalgias. Furthermore, on December 2, 2008, Ms. Stuner indicated that claimant reported increased fatigue and muscle and joint pain lasting all of the time. Ms. Stuner diagnosed claimant with asthma and polyarthralgias, noting decreased flexion of the lumbar spine and expiratory wheezes upon examination. Ms. Stuner's December 2, 2008, notes do not, however, diagnose claimant with or mention chronic fatigue syndrome. Ms. Stuner again examined claimant on June 10, 2010, diagnosing her with fibromyalgia and diarrhea, reporting, but no specifying, that she demonstrated fibromyalgia tender points. Finally, on January 27, 2011, claimant visited Ms.

10

> Stuner regarding diarrhea lasting for two weeks involving rectal leakage. Ms. Stuner reported that claimant demonstrated general fibromyalgia tender points and she diagnosed claimant with chronic fatigue syndrome, fibromyalgia, and asthmatic bronchitis.
>
> . . .
>
> Initially, I note that many of claimant's diagnoses were provided by Ms. Stuner. However, Ms. Stuner is a nurse practitioner and is not an acceptable medical source to establish the edistence of a medically determinable impairment. Regardless, Ms. Stuner noted on several occasions that claimant demonstrated asthma or asthmatic bronchitis, reporting expiratory wheezes on examination. Yet the record is replete with notations of claimant continuing to smoke cigarettes, suggesting that her condition was not as limiting or serious as proposed. . . .
>
> . . .
>
> I give little weight to the August 21, 2009, medical source statement completed by [Dr.] Nowland. Dr. Nowland stated that she has treated claimant since August 2002, yet claimant submitted very few treatment records from Dr. Nowland. Claimant's attorney submitted several exhibits reporing that the records were from Dr. Nowland, buy they are in fact signed by Ms. Stuner and make not mention of Dr. Nowland ever having examined and treated claimant. Dr. Nowland described claimant as having "poor memory with declining problem solving abilities," yet numerous records, discussed previously, mention that claimant had intact memory. Dr. Nowland indicated that claimant had "constant" fatigue and muscle pain, yet Dr. Cagnoli reported that laboratory results did not support claimant's reported level of fatigue and physical examinations did not reveal reported muscle tenderness. As discussed earlier, the record does not support any exertional, postural, or manipulative limitations, as reflected in Dr. Cagnoli's examination findings and the consultative examination report of Dr. Gause.
>
> Little weight is accorded to the "statements" made by Ms. Stuner, a nurse practitioner. Ms. Stuner is not an acceptable medical source. As discussed above, her office visit notes contain numerous diagnoses, but little to no support for these findings. Although she examined and treated claimant on numerous occasions, her notes contain largely conclusory statements mostly void of objective findings and not providing much, if any, assistance in determining claimant's impairments and corresponding limitations.

(TR 27-28, 36)

While the ALJ did consider NP Stuner's status as a nurse practitioner and did note that she

11

was not an acceptable medical source, the ALJ did more than simply disregard her opinion on those grounds. Moreover, the ALJ did not disregard Dr. Nowland's opinion simply because NP Stuner provided the initial diagnoses. With regard to both individuals, the ALJ also considered the supportability of their opinions and diagnoses along with conflicting information from other providers. Thus, the ALJ's reliance, in part, on NP Stuner's status and Dr. Nowland's lack of personal contact with Plaintiff is not error. To the contrary, consideration of this information is a required part of the ALJ's analysis.

### b. Dr. Gause's Report

In reaching his decision, the ALJ afforded the opinion of Dr. Richard Gause, a consultative examiner, great weight. (TR 35-36.) Plaintiff argues that while the ALJ afforded Dr. Gause's opinion great weight, he nevertheless minimized the severity of Plaintiff's limitations as suggested by Dr. Gause. (Docket no. 16 at 20-21.) Specifically, the ALJ found as follows:

> Dr. Gause's findings are consistent with his examination results and claimant's treatment records and he has significant experience evaluating individuals according to social security guidelines. Dr. Gause noted that claimant's impairments provided, at best, mild restriction. Dr. Gause's report notes the presence of various impairments, but, like claimant's treatment records, no corresponding infringement upon the ability to perform basic work activities.

(TR 35-36.) Plaintiff contends that "[n]othing about [Dr. Gause's findings] reflected that . . . 'claimant's impairments provided, at best, mild restrictions.'" (Docket no. 16 at 21.) To the contrary, Plaintiff asserts, Dr. Gause's report stated that her conditions "produce[d] a lot of symptoms" and that they had "multiple spillovers, i.e. she regularly showers two or more times daily, worries about the arythema of her hands, etc." (*Id.* at 20-21.)

Dr. Gause's conclusions regarding Plaintiff are not particularly convoluted:

1. Connective tissue disorder, immune system deficiency and chronic fatigue.

12

> These all go together in one spectrum producing a lot of symptoms for which she is taking a lot of medications. The objective findings are essentially unremarkable. It has multiple spillovers, i.e., she regularly showers two or more times daily, worries about the erythema of her hands, etc.
>
> 2. Irritable bowel syndrome.
>
> This is helped but not completely by her medications.
>
> 3. Gastroesophageal reflux disease.
>
> This has been helped by her medications.
>
> 4. Asthma.
>
> She is taking five difference medications for asthma and her chest was clear today. She has only minimal exertional limitations.

(TR 291.)

As Defendant asserts, Dr. Gause did not provide any opinion with regard to Plaintiff's functional limitations except to say that her asthma causes "only minimal exertional limitations." Plaintiff implies that the severity of her symptoms is supported by Dr. Gause's statements and that the ALJ should have found that these symptoms translated to functional limitations. (Docket no. 19 at 3-4.) But as Defendant contends, there is no law supporting such a presumption. Moreover, Defendant argues, "this silence is tantamount to an opinion that Plaintiff had no such limitations." (Docket no. 18 at 16.) While the undersigned does not accept Defendant's assertion that Dr. Gause's silence equates to a statement that Plaintiff had no such limitations, the ALJ likewise did not err by failing to translate Dr. Gause's minimal opinions regarding Plaintiff's limitations into something greater. Additionally, the ALJ's finding that "Dr. Gause noted that claimant's impairments provided, at best, mild restriction" is consistent with Dr. Gause's report.

### c. Additional Reports and Findings

Plaintiff also discusses the ALJ's findings with regard to Dr. Harris Weaver, M.D.,

13

Plaintiff's rheumatologist in 2004; Dr. Patricia Cagnoli, a rheumatologist with whom Plaintiff treated "on several occasions" in 2010; Dr. Michael Rice, with whom Plaintiff treated in 2010 for gastrointestinal issues; and Dr. Tania Gonzalez-Rivera, with whom Plaintiff treated starting in late 2011. With regard to Dr. Weaver, Dr. Cagnoli, and Dr. Rice, Plaintiff asserts that the ALJ's failure to afford these physicians' determinations greater weight resulted in a failure to find her impairments severe at Step 2. For the reasons discussed, *supra*, Plaintiff's argument is legally irrelevant. And to the extent she asserts that the ALJ should have afforded them greater weight in the determination of her RFC, she provides no insight into the functional limitations that the ALJ would have found if he had done so.

Finally, with regard to Dr. Gonzalez-Rivera, as the ALJ found, Plaintiff did not treat with her until 11 months after her date last insured; thus, "her opinion is of little assistance in this matter." (TR 37.) More important, though, is the ALJ's acknowledgment that "Dr. Gonzalez-Rivera declined to provide an opinion as to the claimant's functional capacity, stating that she was 'unable to determine' this area." (*Id.*) Where the doctor herself determined that she could not provide any insight into Plaintiff's functional limitations, the ALJ did not err in declining to afford her opinion any weight.

### d.     Review of the ALJ's Factual Determinations

Ultimately, the medical record in this matter contains a myriad of findings from multiple doctors, some of which are at odds with each other. As a finder of fact, the ALJ was charged with sifting through these materials and making a determination with regard to how much weight should be attributed to all of the evidence before him. Plaintiff may disagree with the ALJ's findings, but the ALJ committed no reversible error in weighing this evidence. Moreover, even if

14

the Court would agree with Plaintiff's interpretation of the evidence and find her physical impairments disabling, the ALJ's decision is supported by substantial evidence and must be affirmed.

### 2. Plaintiff's Mental Restrictions

Plaintiff also contends that the ALJ failed to properly include an RFC restriction to low-stress jobs. (Docket no. 16 at 24.) In support of her position, Plaintiff points to the ALJ's determination to afford great weight to the opinion of Dr. Steve Geiger, a consultative examiner, who found that Plaintiff would have "difficulty consistently handling work pressure and stress." (*Id.*) Additionally, Plaintiff argues that the ALJ failed to include a restriction requiring Plaintiff to miss one day of work per month due to her impairments. (*Id.* at 25.) Again, Plaintiff points to the ALJ's decision to give great weight to the opinion of Ann Swan, M.A., LLP, who stated that Plaintiff required such a limitation. (*Id.*) Plaintiff argues that the ALJ's failure to explain why he did not include these restrictions warrants reversal.

> In relevant part, the ALJ found as follows:
>
> The evidence of record does not suggest or establish that claimant lacks suitable concentration, memory, adaptive, basic cognitive or interpersonal skills for vocational involvement that is simple, routine, and repetitive in nature and involves occasional decision-making. Claimant reportedly obtained positive benefit from outpatient therapy and peroidoc use of psychotropic medication. Within testimony or the written record, it was reported that claimant performed self-care tasks and other activities. Claimant prepared meals, drove, watched television and read. According to Dr. Geiger, claimant could understand and follow instructions and perform routine tasks, though she would have difficult consistently handling work pressure and stress.
>
> Claimant also reported difficulty interacting with others. As previously mentioned, she described herself to Dr. Geiger as a "loner" with very little social interaction. Moreover, Ms. Swan noted that claimant reported and angry and upset mood, and her progress notes reflect numerous problems interacting with family members and significant others. Furthermore, Dr. Geiger noted that

> claimant would have difficulty communicating with coworkers, customers, and supervisors. However, Dr. Geiger stated that claimant appeared cooperative, friendly, and verbal. Therefore, the record supports claimant's contention of difficulties interacting with others, and she can occasionally have public interaction, coworker interaction, and supervision.
>
> . . . Great weight is provided to Dr. Geiger's medical source statement, discussed above. . . .
>
> . . .
>
> Great weight is provided to the November 30, 2010, mental medical source statement completed by Ms. Swan. Ms. Swan is not an acceptable medical source. However, she has provided claimant with therapy sessions on a regular basis since June 2010, and is familiar with claimant's symptoms. Her recitation of the claimant's symptoms is mostly consistent with the evidentiary record and she provided very mild mental limitations. She noted that claimant is "limited but satisfactory" in dealing with normal work stress and in completing a normal workday and workweek without interruptions. Essentially, I interpret Ms. Swan's comments as consistent with the adopted-residual functional capacity, even though I find greater limitations, in so doing providing claimant the benefit. I do not find that a "limited but satisfactory" ability to complete a normal workday and workweek without interruptions is of sufficient severity to require additional limitations or equate to work preclusiveness.

(TR 35, 36.)

As Plaintiff asserts, the ALJ chose to afford these opinions "great weight," yet he failed to include the limitations proposed by Dr. Geiger and Ms. Swan in Plaintiff's RFC. Defendant attempts to parse the ALJ's language and justify the lack of discussion by implying that the ALJ used Ms. Swan's opinion to undercut Dr. Geiger's opinion; that is, while Dr. Geiger found that Plaintiff "would have difficult consistently handling work pressure and stress," Ms. Swan found that Plaintiff was "limited but satisfactory" in her ability to "[d]eal with normal work stress." (Docket no. 18 at 23.) Moreover, Defendant argues, the restrictions the ALJ did include "obviously eliminate a great amount of stress associated with many workplaces." (*Id.* at 24.) But the ALJ made no such connection between Dr. Geiger's findings and Ms. Swan's opinion.

16

And Defendant's post-hoc rationalization is insufficient to support the ALJ's decision. *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a de novo review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's."). Additionally, Defendant asserts, while Ms. Swan suggested that Plaintiff would miss one day of work each month, the ALJ stated that Plaintiff's ability to "'maintain regular attendance . . . is not supported by Dr. Geiger's report or [Plaintiff's] mental health treatment records.'" (*Id.* at 24 (quoting TR 36).) This quote, however, comes from the ALJ's discussion of Dr. Ashok Kaul's mental assessment, which the ALJ gave only partial weight, and is not directly related to any discussion of Ms. Swan's opinion. (*See* TR 36.)

In giving Dr. Geiger and Ms. Swans' opinions great weight, the ALJ was not required to adopt all of their findings. But here, the ALJ failed to articulate his rationale for not doing so. Moreover, as Plaintiff points out, the ALJ's error is not harmless as the VE testified that missing at least one day per month would be work preclusive. (*See* docket no. 16 at 25.) Therefore, this matter should be remanded for further consideration of Plaintiff's mental impairments in light of Dr. Geiger and Ms. Swans' findings.

## VI. Conclusion

For the reasons discussed above, Plaintiff's Motion for Summary Judgment [16] should be GRANTED and Defendant's Motion for Summary Judgment [18] should be DENIED. This matter should be remanded for further consideration as discussed herein.

17

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 4, 2015          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: December 4, 2015          s/ Lisa C. Bartlett
                                 Case Manager

18